UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMERICAN STRATEGIC INSURANCE CORP, a foreign insurer,<br><br>             Plaintiff,<br>    v.<br><br>JACOB JACKSON, individually, INSPIRIT ATHLETICS, INC, a Washington For-Profit Corporation, d.b.a., STERLING ATHLETICS, JOHN DOE 1, individually, JOHN DOE 2, individually, JANE DOE 1, individually, JOHN DOE 3, individually, JOHN DOE 4, individually, JANE DOE 2, individually, STACY JACKSON, JANE DOE 20, as guardian ad litem for JOHN DOE 20, JOHN DOE 20, JOHN DOE 21,<br><br>             Defendants. | CASE NO. 3:23-cv-05461-RJB<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff American Strategic Insurance Corp's Motion for Summary Judgment. Dkt. 38. The Court has considered the pleadings filed regarding the motion and the remaining file. It is fully advised.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

In this case, the Plaintiff insurance company seeks a declaration that it has no duty to defend or indemnify Jacob Jackson and others for claims asserted against them in civil lawsuits which allege that Mr. Jackson sexually abused and exploited minors. Dkt. 34. Criminal charges against Mr. Jackson, including for rape of a child in the third degree, child molestation in the third degree, and communication with a minor for immoral purposes, are now in pending Pierce County, Washington Superior Court, case number 23-1-01260-9 ("criminal case"). Dkt. 39-3.

The Plaintiff now moves for partial summary judgment on its claims against Mr. Jackson as they relate to *John Doe 1, et. al. v. Inspirit Athletics, Inc. et. al,* Pierce County, Washington Superior Court case number 22-2-09631-0 ("John Doe 1 lawsuit") and *John Doe 3, et. al. v. Inspirit Athletics, Inc. et. al,* Pierce County, Washington Superior Court case number 23-2-05052-1 ("John Doe 3 lawsuit"). Dkt. 38. Its claims against Mr. Jackson related to a third lawsuit are not the subject of the present motion. *Id.* For the reasons provided below, the motion (Dkt. 38) should be granted.

## I.   FACTS

The Plaintiff issued a homeowners insurance policy ("primary policy") to Mr. Jackson and his wife, Stacy Jackson. Dkts. 45-3 and 45-4.[1] This primary policy was in effect consecutively between September 16, 2019 - September 16, 2022. Dkts. 45-1, 45-2 and 39-7.[2] In addition to the primary policy, the Plaintiff also issued an umbrella liability policy to Mr. and Mrs. Jackson, with a policy period of January 12, 2021 - January 12, 2022 ("umbrella policy"). Dkt. 39-8.

---

[1] The declaration page for the 2019-2020 policy is filed at Dkt. 45-3 and the policy is filed at Dkt. 45-4.

[2] The declaration page for the 2020-2021 policy is filed at Dkt. 45-1. The declaration for the 2021-2022 policy is filed at Dkt. 45-2. The 2020-2021 policy and 2021-2022 policy are identical (Dkt. 45 at 2) and a copy of that policy is filed at Dkt. 39-7. In any event, the relevant language in all three policies 2019-2020, 2020-2021, and 2021-2022 is identical. Dkts. 45-4 and 39-7.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

The Plaintiff accepted defense of the civil lawsuits at issue pursuant to a reservation of rights.  Dkts. 39-4 - 39-6.  It then filed this case, seeking, as is relevant to this motion, a declaration that it owes no duty to defend or indemnify Mr. Jackson for any of the claims asserted against him in the John Doe 1 and John Doe 3 lawsuits (Dkt. 34 at 66-67).

### A. ALLEGATIONS IN THE UNDERLYING JOHN DOE 1 AND JOHN DOE 3 LAWSUITS

1. John Doe 1 Lawsuit

According to the complaint filed in the John Doe 1 lawsuit, Mr. Jackson was the boys' basketball coach for Sumner High School, located in Sumner, Washington, from 2016 to September of 2022.  Dkt. 39-1 at 4 (John Doe 1 complaint).  Mr. Jackson is also alleged to be the CEO of Inspirit Athletics, Inc. d/b/a/ Sterling Athletics ("Sterling") a sports equipment manufacturing and marketing company.  *Id.* at 4.  (Sterling is also a defendant in this case but is not the subject of the present motion.)

The John Doe 1 lawsuit contends that Mr. Jackson became aware of John Doe 1's basketball playing abilities while John Doe 1 was in middle school and began to shower John Doe 1 with attention, gifts, and cash.  Dkt. 39-1 at 4.  It alleges that in addition to coaching John Doe 1 on the high school basketball team, Mr. Jackson offered John Doe 1 a job at Sterling, which John Doe 1 accepted.  *Id.*  The John Doe 1 lawsuit maintains that Mr. Jackson contacted John Doe 1, by company phone, via social media and text message, and that communication eventually led to Mr. Jackson sending, and requesting, nude pictures and videos (to include those of masturbation and urination).  *Id.* at 4-5.

The complaint in the John Doe 1 lawsuit contends that in the summer of 2020, Mr. Jackson invited John Doe 1 to his home to do yard work.  *Id.*  After John Doe 1 completed the yard work, Mr. Jackson allegedly invited John Doe 1 into the house, cornered him in a bedroom

closet and masturbated in front of John Doe 1. *Id.* at 6. The John Doe 1 lawsuit alleges that over the next two years, Mr. Jackson coerced John Doe 1 into sending pictures of his genitalia. *Id.* John Doe 1 asserts that he complied because he did not want to lose his job at Sterling or jeopardize his playing time on the high school basketball team. *Id.* As is relevant here, the John Doe 1 lawsuit makes claims for sexual exploitation of children, outrage, and loss of the parent child relationship against both Mr. Jackson and Sterling and sexual assault and false imprisonment against Mr. Jackson. *Id.* at 7-13. John Doe 1 seeks damages, attorneys' fees and costs. *Id.* at 14.

On December 1, 2023, the John Doe 3 lawsuit was stayed until the criminal case against Mr. Jackson has concluded. Dkt. 42 at 7-8. (Trial on the criminal charges is set to begin on June 17, 2024. Dkt. 43 at 2 n. 1).

2. <u>John Doe 3 Lawsuit</u>

The allegations in the John Doe 3 lawsuit are like those in the John Doe 1 lawsuit. Dkt. 39-2 (John Doe 3 complaint). The complaint in John Doe 3 alleges that Mr. Jackson, while coaching John Doe 3 on the high school basketball team, offered John Doe 3 a job at Sterling, which John Doe 3 accepted. Dkt. 39-2. It contends that Mr. Jackson sent nude images and videos of himself to John Doe 3. *Id.* The complaint in John Doe 3 asserts that Mr. Jackson repeatedly asked John Doe 3 to send nude pictures and videos back. *Id.* It alleges that Mr. Jackson repeatedly exposed his penis to John Doe 3 in the car on rides to work and at Sterling. *Id.* at 4-6.

The complaint in the John Doe 3 lawsuit contends that Mr. Jackson invited John Doe 3 to his home to do yard work on more than one occasion. Dkt. 39-2 at 5. John Doe 3 alleges that after the work outside was complete, Mr. Jackson would invite him in the house and would

expose his penis and sometimes masturbate in front of him. *Id.* On at least one occasion, Mr. Jackson allegedly offered to show John Doe 3 several pairs of athletic shoes which were in a closet. *Id.* While in the closet, John Doe 3 contends that he turned around and Mr. Jackson was blocking the door masturbating. *Id.* The complaint asserts that Mr. Jackson then demanded that John Doe 3 expose his own genitals to escape the closet. *Id.* John Doe 3 also maintained that he was afraid to decline Mr. Jackson's various requests for pictures of his genitals and to expose himself for fear of the repercussions. *Id.*

As is relevant here, the John Doe 3 lawsuit makes claims for sexual exploitation of children, outrage, and loss of the parent child relationship against both Mr. Jackson and Sterling and sexual assault and false imprisonment against Mr. Jackson. *Id.* at 7-13. He seeks damages, attorneys' fees and costs. *Id.* at 14.

On November 28, 2023, the John Doe 3 lawsuit was stayed until the criminal case against Mr. Jackson has concluded. Dkt. 42 at 4-5. Again, trial in the criminal case is set to begin June 17, 2024.

**B. INSURANCE POLICIES**

As stated above, there are two insurance policies which are the subject of this case: the primary policy and umbrella policy.

1. <u>Relevant Primary Policy Provisions</u>

The primary policy provides insurance for lawsuits brought against an "insured" (Mr. Jackson) for damages because of "bodily injury" caused by an "occurrence." Dkts. 39-7 at 35 and 45-4 at 21. An "occurrence" is defined as "an accident." Dkts. 39-7 at 46-47 and 45-4 at 32.

The primary policy contains several exclusions that the Plaintiff contends apply. For example, "'bodily injury' . . . which is expected or intended by an 'insured'" (Dkts. 39-7 at 37

and 45-4 at 23) as well as "'bodily injury' . . . arising out of sexual molestation, corporal punishment or physical or mental abuse" (Dkts. 39-7 at 38 and 45-4 at 24) are excluded from coverage.  The primary policy also excludes coverage for "'bodily injury' . . . resulting from any illegal or criminal act performed by, at the direction of, or in conspiracy with any 'insured.'  This exclusion applies regardless of whether the insured is charged with a crime." Dkts. 39-7 at 39 and 45-4 at 24.

Included for an "additional premium," the policy's "personal injury" coverage provisions provide, in relevant part:

> If a claim is made or suit is brought against an 'insured' for damages resulting from an offense, defined under 'personal injury,' to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which an 'insured' is legally liable. Damages include prejudgment interest awarded against an 'insured;' and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

Dkt. 39-7 at 70.[3]  "Personal injury" is, in turn, defined as:

> Injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:
>
> 1. False arrest, detention or imprisonment;
>
> 2. Malicious prosecution; . . .
>
> 4. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

---

[3] All three years of the primary policy use the same form for the "personal injury" coverage (Dkt. 45 at 2)(noting that all polices use form number ASI HO PNJ 0417), so only one citation to the record is necessary.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

> 5. Oral, written or electronic publication of material that violates a person's right of privacy.

Dkt. 39-7 at 70.  The policy's "personal injury" coverage excludes coverage for:

> 'Personal injury' which is expected or intended by or at the direction of an 'insured' with the knowledge or reasonable expectation that the act would violate the rights of another or would inflict 'personal injury.'
>
> This exclusion applies even if the resulting 'personal injury' is of a different kind, quality or degree than initially expected or intended or is sustained by a different person, entity, real or personal property, than initially expected or intended.

Dkt. 39-7 at 70.  It also excludes coverage for "'personal injury' arising out of any illegal or criminal act performed by, at the direction of, or in conspiracy with any 'insured.' This exclusion applies regardless of whether the insured is charged with a crime."  Dkt. 39-7 at 71.

      2.   <u>Relevant Umbrella Policy Provisions</u>

The umbrella policy provided coverage for "damages, in excess of the 'retained limit'" for (1) "'bodily injury' . . . for which an 'insured' becomes legally liable due to an 'occurrence' to which this insurance applies" and (2) "'personal injury' for which an 'insured' becomes legally liable due to one or more offenses listed under the definition of 'personal injury' to which this insurance applies."  Dkt. 39-8 at 14.  The umbrella policy defines "retained limit" as the "total limits of any underlying insurance and any other insurance that applies."  *Id*.  The umbrella policy's definitions of "occurrence," "bodily injury," and "personal injury" are the same as the primary policy's definitions in all material ways.  *Id.* at 12-13.

The umbrella policy also contains several exclusions that the Plaintiffs maintain are relevant.  For example, it excludes "'bodily injury' . . . and 'personal injury' unless such liability is also covered under the applicable underlying insurance."  Dkt. 39-8 at 8.  The umbrella policy excludes "'bodily injury' which is expected or intended by an 'insured'" (*Id.* at 15) and "'bodily

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

injury' and 'personal injury' arising out of: sexual molestation, corporal punishment or mental abuse" (*Id.* at 16).  The umbrella policy excludes:

> 'Bodily injury' . . . or 'personal injury' that is caused by or at the direction of any one or more 'insureds' or resulting from any act or omission which is illegal or criminal in nature and is committed by any 'insured.' This exclusion applies regardless of whether the 'insured' is actually charged with or convicted of a crime.

Dkt. 39-8 at 8.  It further excludes "'personal injury' arising out of broadcasting, communicating, posting, publishing, searching, accessing or telecasting through the internet or intranet. This includes but is not limited to all electronic communications sent via computer, mobile device, telephone, satellite or any other electronic device." Dkt. 39-8 at 8.

### C. PROCEDURAL HISTORY OF THIS CASE

This case was originally filed on May 19, 2023.  Dkt. 1.  On June 20, 2023, Mr. Jackson filed a motion to stay this case arguing that his Fifth Amendment rights would be implicated if he was forced to answer discovery and otherwise defend.  Dkt. 11.  On July 11, 2023, Mr. Jackson's motion was granted, in part, and denied, in part.  Dkt. 22.  Discovery requests to Mr. Jackson are currently stayed until criminal charges against Mr. Jackson are resolved.  *Id.* at 3.  Further, counsel was ordered to advise the Court of such a resolution, but, in any event, to report to the Court no later than February 1, 2024 of the status of the criminal case.  *Id.*

### D. PENDING MOTION

In the pending motion, the Plaintiff argues that the claims asserted against Mr. Jackson in the John Doe 1 and John Doe 3 lawsuits do not fall within the coverage provided in the primary or umbrella policies. Dkt. 38.  It contends that the events that form the basis of John Doe 1 and John Doe 3's complaints were not "occurrences" as defined in the policies.  *Id.*  The Plaintiff further maintains that several of the policies' provisions exclude coverage.  *Id.*

Defendant Jacob Jackson responded and opposes the motion. Dkt. 41. He argues that the Court should not address coverage issues at this time because of his invocation of this Fifth Amendment rights, including the right to remain silent and the privilege against self-incrimination. Dkt. 41. Mr. Jackson contends that due to the pending criminal case, he cannot present a defense against the motion and asserts that the authority cited by the Plaintiff insurance company does little or nothing to address this issue. *Id.* Mr. Jackson argues that once the criminal case has reached its conclusion, there will be no obstacle to Mr. Jackson addressing coverage issues and the questions raised will be resolved shortly thereafter. *Id.*

The Plaintiff replied and argues that no testimony is necessary to decide the motion, so Mr. Jackson's Fifth Amendment rights are not implicated. Dkt. 44. It contends that there is no actual or potential coverage for the claims asserted against Jackson in the John Doe 1 or John Doe 3 lawsuits. *Id.*

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, which is a preponderance of the evidence in most civil cases. *Anderson* at 254. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect.* at 630. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888–89 (1990).

**B.  TIMING OF THE SUMMARY JUDGMENT MOTION**

Mr. Jackson urges the Court to deny the Plaintiff's motion for summary judgment. Dkt. 41. He maintains that his Fifth Amendment rights would be impinged if he responds. *Id.* Mr. Jackson contends that after the criminal case against him is decided, this motion could be addressed. *Id.*

Mr. Jackson's argument is unavailing. He fails to offer any substantive grounds as to why his testimony is required for him to raise arguments that there is at least potential coverage under the policies. In Washington, when an insurer receives a complaint against its insured, it "is permitted to use the 'eight corners rule' to determine whether, on the face of the complaint and the insurance policy, there is an issue of fact or law that could conceivably result in coverage

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

under the policy." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 182 (2017).  Mr. Jackson's testimony (or any other proven facts) are not required to decide the motion.  The Court should proceed.

### C.  WASHINGTON INSURANCE LAW

In Washington, an insurance policy is construed as a contract and given "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Xia* at 181 (*quoting Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash.2d 618, 627 (1994)).  Every insurance contract is "construed according to the entirety of its terms and conditions as set forth in the policy." *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 710 (2016).  Courts in Washington do not interpret an insurance contract's phrases in isolation and give effect to each provision. *Certification From United States Dist. Court ex rel. W. Dist. of Washington v. GEICO Ins. Co.*, 184 Wn.2d 925, 930 (2016).

"Interpretation of the terms of an insurance policy is a matter of law." *Allstate Inc. Co. v. Raynor,* 143 Wash.2d 469, 476 (Wash. 2001).  "If terms are defined in a policy, then the terms should be interpreted in accordance with that policy definition." *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 576 (1998).  "Undefined terms are to be given their plain, ordinary, and popular meaning." *Xia* at 6.

In Washington, "the duty to defend is different from and broader than the duty to indemnify." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 404 (2010)(*internal citation omitted*). The duty to indemnify exists only if the insurance policy actually covers the insured's liability, whereas the duty to defend arises when the policy could conceivably cover allegations in a complaint. *Xia* at 182.  "[A]n insurer must defend a complaint against its insured until it is clear that the claim is not covered." *Id. (citing Am. Best Food* at 405).

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

With these principles in mind, the Plaintiff's motion for summary judgment on whether it has a duty to defend and indemnify Mr. Jackson on the two lawsuits will be considered.

### D. DUTY TO DEFEND

The Plaintiff's motion for summary judgment regarding the duty to defend (Dkt. 38) should be granted.  The Plaintiff has no duty to defend Mr. Jackson in the John Doe 1 and John Doe 3 lawsuits.  Neither the primary policy nor the umbrella policy (which only provides coverage if the primary policy does) could conceivably cover the allegations in the complaints. *Xia* at 182.

          1.    <u>Allegations in the Complaints were not for "Occurrences"</u>

The primary policy provides coverage for "bodily injury" caused by an "occurrence." Dkts. 39-7 at 35 and 45-4 at 21.  It defines an "occurrence" as "an accident."  Dkts. 39-7 at 46-47 and 45-4 at 32.

In considering issues of insurance coverage, Washington courts define an "accident" as "an unusual, unexpected, or unforeseen happening." *Allstate Ins. Co. v. Bauer*, 977 P.2d 617, 620 (Wash. Ct. App. 1999).  Further, "[a]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury . . . . The means as well as the result must be unforeseen, involuntary, unexpected and unusual." *Detweiler v. J.C. Penney Cas. Ins. Co*., 110 Wn.2d 99, 104 (1988).  A victim's claims against a Washington insured for "outrage . . . and childhood sexual abuse do not arise from an accident, and thus do not fall within scope of coverage under homeowner's insurance policies that cover only accidental occurrences." *Schorno v. State Farm Fire & Cas. Co*., 2010 WL 3119449, at *5 (W.D. Wash. Aug. 3, 2010)(*aff'd*, 445 Fed. Appx. 956 (9th Cir. 2011)).

None of the allegations in either of the John Doe 1 or John Doe 3 complaints are for "occurrences." Both complaints allege a series of intentional acts of childhood sexual abuse by Mr. Jackson. There are allegations that Mr. Jackson repeatedly exposed his genitals, masturbated in front of the victims, send nude pictures and videos and requested that the victims do the same. Dkts. 39-1 at 39-2. Both victims allege that they unwillingly complied with Mr. Jackson's requests out of fear that they would not get playing time on the basketball team or lose their jobs with his company. *Id.* There are no conceivable allegations supporting a theory that there were "accidents" or "unintentional acts." Allegations of intentional sexual abuse are not accidental; they do not constitute an "occurrence" and so there is no coverage under the policies. *Schorno* at 5. Further, as discussed below, several exclusions apply.

While the primary policy's "personal injury" provision covers "injuries arising out of . . . false . . . imprisonment . . ." (Dkt. 39-7 at 70) and may apply to the incidents alleged to have occurred in Mr. Jackson's home closet, several exclusions to this coverage apply as will be discussed in the next section.

        2.  <u>Several Exclusions Apply</u>

The primary policy excludes coverage for "'bodily injury' . . . which is expected or intended by an 'insured'" and for "'personal injury' which is expected or intended by or at the direction of an 'insured' with the knowledge or reasonable expectation that the act would violate the rights of another or would inflict 'personal injury.'" Dkts. 39-7 at 37; 45-4 at 23; and 39-7 at 70. The umbrella policy also excludes "bodily injury" that is intended by the insured. Dkt. 39-8 at 15. These exclusions will be collectively referred to as "intentional acts exclusions."

The intentional acts exclusions exclude coverage for Mr. Jackson under the policies. Again, the allegations in the John Doe 1 and John Doe 3 lawsuits are all related to Mr. Jackson's

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

intentional sexual abuse of minor children.  In Washington, an intent to injure is inferred to the insured in sex abuse cases.  *Rodriguez v. Williams*, 107 Wn.2d 381, 387 (1986)(holding that stepfather's intent to injure stepdaughter inferred as a matter of law when he committed acts of incest; accordingly, no homeowners insurance coverage under exclusion for intentional acts).  Given the legal inference that Mr. Jackson intended to injure John Doe 1 and John Doe 3 in his sexual abuse of them, there is no coverage for Mr. Jackson under the policies due to the intentional acts exclusions.

Further, the primary policy excludes "'bodily injury' . . . arising out of sexual molestation" as well as "bodily injury" and "personal injury" resulting from an illegal or criminal act performed by an insured.  Dkts. 39-7 at 38-39; 45-4 at 24; 39-7 at 71.  The umbrella policy also excludes "bodily injury" and "personal injury" "arising out of sexual molestation" or "illegal or criminal" acts or omissions.  Dkt. 39-8 at 8 and 16.

The allegations in the complaints "arise" from the "sexual molestation" of John Doe 1 and John Doe 3 by Mr. Jackson.  John Doe 1 and John Doe 3 contend that their injuries are a result of Mr. Jackson's illegal or criminal acts of sexual exploitation.  Both the primary and umbrella policies exclude coverage for these acts.

Further, the parents of John Doe 1 and John Doe 3 make claims for loss of the parent/child relationship.  Dkts. 39-1 and 39-2.  Their alleged loss, to the extent it is a covered loss, directly resulted from Mr. Jackson's sexual molestation of their children; "it necessarily arises out of that conduct."  *Safeco Ins. Co. of Am. v. Wolk*, 342 F. Supp. 3d 1104, 1111 (W.D. Wash. 2018).  The policies do not cover the parents' claims, either.

**E.  DUTY TO INDEMNIFY**

If there is no duty to defend, then there is no duty to indemnify.  *Liberty Mut. Ins. Co. v. Lange*, 2023 WL 4704712, at *6 (W.D. Wash. July 24, 2023)(*citing Woo v. Fireman's Fund Ins. Co.,* 161 Wash.2d 43, 53 (2007)).  There is no duty to defend here, so there is no duty to indemnify.

### F. CONCLUSION

The Plaintiff's motion for summary judgment should be granted.  There are no material issues of fact and the Plaintiff is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  Mr. Jackson's claim of possible impingement on his Fifth Amendment rights do not raise a material issue.  His arguments are speculative.  Mr. Jackson fails to make a basic showing that a delay or stay of this motion is required.  Given the allegations in the John Doe 1 and John Doe 3 complaints, there is no conceivable coverage under the policies, much less actual coverage.  The Plaintiff has no duty to defend or indemnify Mr. Jackson for the claims asserted against Mr. Jackson in the John Doe 1 or John Doe 3 lawsuits.  This order only addresses the Plaintiff's duties to Mr. Jackson in the John Doe 1 and John Doe 3 lawsuits.

### III. ORDER

It is **ORDERED** that:

- Plaintiff American Strategic Insurance Corp's Motion for Summary Judgment (Dkt. 38) **IS GRANTED:**
    - There is no defense or indemnity coverage available to Jacob Jackson under the primary or umbrella policies issued by American Strategic Insurance Corp for the claims asserted against Jacob Jackson in either *John Doe 1, et. al. v. Inspirit Athletics, Inc. et. al,* Pierce County, Washington Superior Court case number 22-2-09631-0 or *John Doe 3, et.*

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

*al. v. Inspirit Athletics, Inc. et. al,* Pierce County, Washington Superior Court case number 23-2-05052-1.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 31st day of January, 2024.

*[signature]*

ROBERT J. BRYAN
United States District Judge