1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

AMERICAN STRATEGIC INSURANCE
CORP, a foreign insurer,

CASE NO.  3:23-cv-05461-RJB

12

Plaintiff,

ORDER ON PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT REGARDING THE
JOHN DOE 20 LAWSUIT

13

v.

14

15

16

17

18

19

JACOB JACKSON, individually,
INSPIRIT ATHLETICS, INC, a
Washington For-Profit Corporation, d.b.a.,
STERLING ATHLETICS, JOHN DOE 1,
individually, JOHN DOE 2, individually,
JANE DOE 1, individually, JOHN DOE 3,
individually, JOHN DOE 4, individually,
JANE DOE 2, individually, STACY
JACKSON, JANE DOE 20, as guardian ad
litem for JOHN DOE 20, JOHN DOE 20,
JOHN DOE 21,

Defendants.

20

21

22

23

24

This matter comes before the Court on Plaintiff American Strategic Insurance Corp's

Motion for Summary Judgment regarding the John Doe 20 Lawsuit.  Dkt. 53.  The Court has

considered the pleadings filed regarding the motion and the remaining file.  It is fully advised.

1        In this case, the Plaintiff insurance company seeks a declaration that it has no duty to

2 defend or indemnify Jacob Jackson or his wife, Stacy Jackson, for claims asserted against them

3 in civil lawsuits which allege that Mr. Jackson sexually abused and exploited minors. Dkt. 34.

4 Criminal charges against Mr. Jackson, including for rape of a child in the third degree, child

5 molestation in the third degree, and communication with a minor for immoral purposes are now

6 pending in Pierce County, Washington Superior Court, case number 23-1-01260-9 ("criminal

7 case"). Dkt. 39-3. Trial on the criminal charges is set to begin on November 19, 2024. *Docket*

8 *last visited on July 18, 2024.*

9        The Plaintiff moves for partial summary judgment on its claims against Mr. and Mrs.

10 Jackson only as they relate to *Jane Doe 20, as Guardian ad Litem for John Doe 20, et. al. v.*

11 *Inspirit Athletics, Inc., et.al.,* Pierce County, Washington Superior Court case number 23-2-

12 08692-4 ("John Doe 20 lawsuit"). Dkt. 53. The Plaintiff was granted summary judgment on its

13 claims against Mr. Jackson as they relate to *John Doe 1, et. al. v. Inspirit Athletics, Inc., et. al,*

14 Pierce County, Washington Superior Court case number 22-2-09631-0 ("John Doe 1 lawsuit")

15 and *John Doe 3, et. al. v. Inspirit Athletics, Inc. et. al,* Pierce County, Washington Superior Court

16 case number 23-2-05052-1 ("John Doe 3 lawsuit") on January 31, 2024. Dkt. 46. Plaintiff's

17 claims, if any, against the other Defendants are not the subject of this motion. For the reasons

18 provided below, the motion (Dkt. 53) should be granted.

19                 **I.**    **FACTS**

20        The Plaintiff issued a homeowners insurance policy ("primary policy") to Mr. and Mrs.

21 Jackson. Dkts. 45-3 and 45-4.[1] This primary policy was in effect between September 16, 2019 -

22

23

24 [1] The declaration page for the 2019-2020 policy is filed at Dkt. 45-3 and the policy is filed at Dkt. 45-4.

September 16, 2022.  Dkts. 45-1, 45-2 and 39-7.[2]  In addition to the primary policy, the Plaintiff also issued an umbrella liability policy to the Jacksons, with a policy period of January 12, 2021 - January 12, 2022 ("umbrella policy").  Dkt. 39-8.

The Plaintiff accepted defense of the civil lawsuit at issue for the Jacksons pursuant to a reservation of rights.  Dkts. 54-1 and 54-2.  It then filed this case, seeking, as is relevant to this motion, a declaration that it owes no duty to defend or indemnify the Jacksons for any of the claims asserted against them in the John Doe 20 lawsuit.  Dkt. 34 at 67-68.

**A.  ALLEGATIONS IN THE UNDERLYING JOHN DOE 20 LAWSUIT**

The allegations in the John Doe 20 lawsuit are like those in the John Doe 1 and John Doe 3 lawsuits.  According to the complaint filed in the John Doe 20 lawsuit, Mr. Jackson was the head boys' basketball coach for Sumner High School, located in Sumner, Washington, from 2016 to September of 2022.  Dkt. 54-3 at 4.  Mr. Jackson is also alleged to be the CEO of Inspirit Athletics, Inc. d/b/a/ Sterling Athletics ("Sterling") a sports equipment manufacturing and marketing company.  *Id.*  (Sterling is also a defendant in this case but is not the subject of the present motion.)

The John Doe 20 lawsuit contends that Mr. Jackson met John Doe 20 when he was around 10 years old and over the next several years showered John Doe 20 with attention and gifts of athletic equipment, Sterling clothing and gear.  Dkt. 54-3 at 5-6.  It alleges that John Doe 20's family lived near Mr. Jackson and Mr. Jackson socialized with the family.  *Id.* at 6.  It alleges that Mr. Jackson began communicating with John Doe 20 by text and through social media applications.  *Id.*

---

[2] The declaration page for the 2020-2021 policy is filed at Dkt. 45-1.  The declaration for the 2021-2022 policy is filed at Dkt. 45-2.  The 2020-2021 policy and 2021-2022 policy are identical (Dkt. 45 at 2) and a copy of that policy is filed at Dkt. 39-7.  In any event, the relevant language in all three policies 2019-2020, 2020-2021, and 2021-2022 is identical.  Dkts. 45-4 and 39-7.

1   The John Doe 20 lawsuit asserts that on September 30, 2019, Mr. Jackson convinced

2   John Doe 20 to come into his home - allegedly to view Mr. Jackson's extensive basketball shoe

3   collection, which was in a bedroom closet.  *Id.* at 7.  While John Doe 20 was in the closet, Mr.

4   Jackson stripped naked, cornered John Doe 20 in the closet, and began masturbating in front of

5   John Doe 20.  *Id.* at 8.  Mr. Jackson laid on his back on the floor, masturbated until he ejaculated

6   on his own chest while John Doe 20 was cornered in the closet.  *Id.*  Mr. Jackson then allegedly

7   forced himself on John Doe 20, grabbing his genitalia and masturbating John Doe 20.  *Id.*

8   The John Doe 20 lawsuit alleges that John Doe 20 started high school at Sumner High

9   School in the 2020-2021 school year.  *Id.* at 6.  He tried out and made the junior varsity

10  basketball team.  *Id.* at 6-7.

11  The John Doe 20 complaint contends that Mr. Jackson sent John Doe 20 social media

12  "pictures and videos of his own abdominal muscles, himself naked, his genitals, and videos of

13  himself performing sexual acts on himself."  *Id.*  It maintains that Mr. Jackson repeatedly

14  requested that John Doe 20 send Jackson pictures of John Doe 20's genitals.  *Id.* at 7.

15  The John Doe 20 lawsuit asserts that while coaching John Doe 20, Mr. Jackson's physical

16  sexual advances escalated.  *Id.* at 8.  It alleges that "[t]hrough coercion as mentor and basketball

17  coach," Mr. Jackson forced John Doe 20 to masturbate with him, to masturbate Mr. Jackson, and

18  Mr. Jackson performed oral sex on John Doe 20 on approximately 30 separate occasions.  *Id.*

19  Mr. Jackson is also alleged to have sat on John Doe 20 naked, pulled John Doe 20 to the ground,

20  grinding his genitalia and buttocks onto John Doe 20 while talking about having anal sex.  *Id.*

21  The John Doe 20 complaint contends that before these sexual acts would occur, Mr. Jackson

22  required John Doe 20 to turn off his phone and any other electronics.  *Id.* at 9.  The John Doe 20

23  lawsuit maintains that John Doe 20 feared that his playing time and/or participation in the

24

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING THE JOHN DOE 20
LAWSUIT - 4

1 Sumner High School basketball program would be jeopardized if he resisted his coach's sexual

2 advances. *Id.* at 9.

3      As to Mrs. Jackson, the John Doe 20 lawsuit alleges that she was an employee of the

4 Sumner-Bonney Lake School District. *Id.* at 13. It maintains that, as a district employee, she

5 was a "mandatory reporter" pursuant to RCW 26.44.040. *Id.* It asserts that she failed to report

6 Mr. Jackson's child abuse of John Doe 20 and perhaps his abuse of others. *Id.*

7      The John Doe 20 lawsuit makes claims for sexual exploitation of children and false

8 imprisonment against Mr. Jackson. *Id.* at 9-15. It makes claims for negligence against Mrs.

9 Jackson and for loss of the parent child relationship against both Mr. Jackson and Mrs. Jackson.

10 *Id.* at 9-15. The John Doe 20 lawsuit asserts a claim under the Washington Law Against

11 Discrimination, RCW 49.60, *et. seq.,* ("WLAD") for discrimination in places of public

12 accommodation but does not identify against whom the claim is asserted. *Id.* Claims against

13 other entities, like Sterling or the Sumner-Bonney Lake School District, are not relevant to the

14 instant motion. John Doe 20 and his parents seek damages, attorneys' fees, and costs. *Id.* at 15-

15 16. Trial in the John Doe 20 lawsuit is set to begin on January 15, 2025. *Jane Doe 20, et. al. v.*

16 *Inspirit Athletics, Inc., et.al.,* Pierce County, Washington Superior Court case number 23-2-

17 08692-4, *docket last visited on July 18, 2024.*

18   **B. INSURANCE POLICIES**

19      As stated above, there are two insurance policies which are the subject of this case: the

20 primary policy and umbrella policy.

21      1.  Relevant Primary Policy Provisions

22      The primary policy provides insurance for lawsuits brought against an "insured" (Mr. and

23 Mrs. Jackson) for damages because of "bodily injury" caused by an "occurrence." Dkts. 39-7 at

24

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING THE JOHN DOE 20
LAWSUIT - 5

35 and 45-4 at 21.  An "occurrence" is defined as "an accident."  Dkts. 39-7 at 46-47 and 45-4 at 32.

The primary policy contains several exclusions that the Plaintiff contends apply.  For example, "'bodily injury' . . . which is expected or intended by an 'insured'" (Dkts. 39-7 at 37 and 45-4 at 23) as well as "'bodily injury' . . . arising out of sexual molestation, corporal punishment or physical or mental abuse" (Dkts. 39-7 at 38 and 45-4 at 24) are excluded from coverage.  The primary policy also excludes coverage for "'bodily injury' . . . resulting from any illegal or criminal act performed by, at the direction of, or in conspiracy with any 'insured.'  This exclusion applies regardless of whether the insured is charged with a crime."  Dkts. 39-7 at 39 and 45-4 at 24.

Included for an "additional premium," the policy's "personal injury" coverage provisions provide, in relevant part:

> If a claim is made or suit is brought against an 'insured' for damages resulting from an offense, defined under 'personal injury,' to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which an 'insured' is legally liable. Damages include prejudgment interest awarded against an 'insured;' and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

Dkt. 39-7 at 70.[3]  "Personal injury" is, in turn, defined as:

> Injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:
>
> 1. False arrest, detention or imprisonment;

---

[3] All three years of the primary policy use the same form for the "personal injury" coverage (Dkt. 45 at 2)(noting that all polices use form number ASI HO PNJ 0417), so only one citation to the record is necessary.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING THE JOHN DOE 20 LAWSUIT - 6

2. Malicious prosecution; . . .

5. Oral, written or electronic publication of material that violates a person's right of privacy.

Dkt. 39-7 at 70.  The policy's "personal injury" coverage excludes coverage for:

'Personal injury' which is expected or intended by or at the direction of an 'insured' with the knowledge or reasonable expectation that the act would violate the rights of another or would inflict 'personal injury.'

This exclusion applies even if the resulting 'personal injury' is of a different kind, quality or degree than initially expected or intended or is sustained by a different person, entity, real or personal property, than initially expected or intended.

*Id*.  It also excludes coverage for "'personal injury' arising out of any illegal or criminal act performed by, at the direction of, or in conspiracy with any 'insured.' This exclusion applies regardless of whether the insured is charged with a crime."  *Id.* at 71.

2.  Relevant Umbrella Policy Provisions

The umbrella policy provided coverage for "damages, in excess of the 'retained limit'" for (1) "'bodily injury' . . . for which an 'insured' becomes legally liable due to an 'occurrence' to which this insurance applies" and (2) "'personal injury' for which an 'insured' becomes legally liable due to one or more offenses listed under the definition of 'personal injury' to which this insurance applies."  Dkt. 39-8 at 14.  The umbrella policy defines "retained limit" as the "total limits of any underlying insurance and any other insurance that applies."  *Id*.  The umbrella policy's definitions of "occurrence," "bodily injury," and "personal injury" are the same as the primary policy's definitions in all material ways.  *Id.* at 12-13.

The umbrella policy also contains several exclusions that the Plaintiffs maintain are relevant.  For example, it excludes "'bodily injury' . . . and 'personal injury' unless such liability is also covered under the applicable underlying insurance."  Dkt. 39-8 at 8.  The umbrella policy excludes "'bodily injury' which is expected or intended by an 'insured'" (*Id.* at 15) and "'bodily

injury' and 'personal injury' arising out of: sexual molestation, corporal punishment or mental abuse" (*Id.* at 16).  The umbrella policy excludes:

> 'Bodily injury' . . . or 'personal injury' that is caused by or at the direction of any one or more 'insureds' or resulting from any act or omission which is illegal or criminal in nature and is committed by any 'insured.' This exclusion applies regardless of whether the 'insured' is actually charged with or convicted of a crime.

Dkt. 39-8 at 8.  It further excludes "'personal injury' arising out of broadcasting, communicating, posting, publishing, searching, accessing or telecasting through the internet or intranet. This includes but is not limited to all electronic communications sent via computer, mobile device, telephone, satellite or any other electronic device." *Id.*

## C. PROCEDURAL HISTORY OF THIS CASE

This case was originally filed on May 19, 2023.  Dkt. 1.  On June 20, 2023, Mr. Jackson filed a motion to stay this case arguing that his Fifth Amendment rights would be implicated if he was forced to answer discovery and otherwise defend.  Dkt. 11.  On July 11, 2023, Mr. Jackson's motion was granted, in part, and denied, in part.  Dkt. 22.  Discovery requests to Mr. Jackson are currently stayed until criminal charges against Mr. Jackson are resolved.  *Id.* at 3.

On January 31, 2024, the Plaintiff's summary judgment motion on its claims against Mr. Jackson related to the John Doe 1 and John Doe 3 lawsuits was granted.  Dkt. 46.  That order found that given the allegations in the John Doe 1 and John Doe 3 complaints, there was no conceivable coverage under the policies, much less actual coverage.  *Id.* at 15.  It went on to hold that the Plaintiff had no duty to defend or indemnify Mr. Jackson for the claims asserted against Mr. Jackson in the John Doe 1 or John Doe 3 lawsuits.  *Id.*

Mr. Jackson's motion for reconsideration of that January 31, 2024 order was denied. Dkt. 47.  Mr. Jackson filed an appeal of the order denying the motion for reconsideration (Dkt.

49) and later voluntarily dismissed that appeal (Dkt. 52).  The instant motion for summary judgment on the John Doe 20 lawsuit (Dkt. 53) followed.

**D. PENDING MOTION**

In the pending motion, the Plaintiff argues that the claims asserted against the Jacksons in the John Doe 20 lawsuit do not fall within the coverage provided in the primary or umbrella policies.  Dkt. 53.  It contends that the events that form the basis of John Doe 20's complaint were not "occurrences" as defined in the policies.  *Id.*  The Plaintiff further maintains that several of the policies' provisions exclude coverage.  *Id.*

The Jacksons respond and oppose the motion.  Dkt. 55.  They contend that allegations of "false imprisonment" are explicitly covered, triggering the duty to defend and indemnify.  *Id.* They further argue that the Court should not address coverage issues at this time because of Mr. Jackson's invocation of this Fifth Amendment rights, including the right to remain silent and the privilege against self-incrimination.  *Id.*  Mr. Jackson contends that due to the pending criminal case, he cannot present a defense against the motion. *Id.*

The Plaintiff replied and argues that no testimony is necessary to decide the motion, so Mr. Jackson's Fifth Amendment rights are not implicated.  Dkt. 56.  It contends that there is no actual or potential coverage for the claims asserted against the Jacksons in the John Doe 20 lawsuit.  *Id.*

## II.  <u>DISCUSSION</u>

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, which is a preponderance of the evidence in most civil cases. *Anderson* at 254. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect.* at 630. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888–89 (1990).

## B. TIMING OF THE SUMMARY JUDGMENT MOTION

As he did in his opposition to the Plaintiff's previous motion for summary judgment on the John Doe 1 and John Doe 3 lawsuits, Mr. Jackson urges the Court to deny the Plaintiff's motion for summary judgment. Dkt. 55. He maintains that his Fifth Amendment rights would

1    be impinged if he responds.  *Id.*  Mr. Jackson contends that after the criminal case against him is

2    decided, this motion could be addressed.  *Id.*

3        Mr. Jackson's argument is unavailing.  He fails to offer any substantive grounds as to

4    why his testimony is required for him to raise arguments that there is, at least, potential coverage

5    under the policies.  In Washington, when an insurer receives a complaint against its insured, it

6    "is permitted to use the 'eight corners rule' to determine whether, on the face of the complaint

7    and the insurance policy, there is an issue of fact or law that could conceivably result in coverage

8    under the policy."  *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 182  (2017).  While he

9    argues that cases cited by the Plaintiff are inapplicable because the allegations in those cases

10   were either proven or established by a settlement, Mr. Jackson has not shown that his testimony

11   (or any other proven facts) are required to decide the motion.  The Court should proceed.

12   **C.  WASHINGTON INSURANCE LAW**

13       In Washington, an insurance policy is construed as a contract and given "'fair,

14   reasonable, and sensible construction as would be given to the contract by the average person

15   purchasing insurance.'"  *Xia* at 181 (*quoting Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire

16   Underwriters Ins. Co.*, 124 Wash.2d 618, 627 (1994)).  Every insurance contract is "construed

17   according to the entirety of its terms and conditions as set forth in the policy."  *Kut Suen Lui v.

18   Essex Ins. Co.*, 185 Wn.2d 703, 710 (2016).  Courts in Washington do not interpret an insurance

19   contract's phrases in isolation and give effect to each provision.  *Certification From United

20   States Dist. Court ex rel. W. Dist. of Washington v. GEICO Ins. Co.*, 184 Wn.2d 925, 930 (2016).

21       "Interpretation of the terms of an insurance policy is a matter of law."  *Allstate Inc. Co. v.

22   Raynor,* 143 Wash.2d 469, 476 (Wash. 2001).  "If terms are defined in a policy, then the terms

23   should be interpreted in accordance with that policy definition."  *Kitsap Cty. v. Allstate Ins. Co.*,

24

1   136 Wn.2d 567, 576 (1998).  "Undefined terms are to be given their plain, ordinary, and popular

2   meaning."  *Xia* at 6.

3       In Washington, "the duty to defend is different from and broader than the duty to

4   indemnify." *Am. Best Food, Inc. v. Alea London, Ltd*., 168 Wash.2d 398, 404 (2010)(*internal*

5   *citation omitted*). The duty to indemnify exists only if the insurance policy actually covers the

6   insured's liability, whereas the duty to defend arises when the policy could conceivably cover

7   allegations in a complaint.  *Xia* at 182.  "[A]n insurer must defend a complaint against its insured

8   until it is clear that the claim is not covered."  *Id.* (*citing Am. Best Food* at 405).

9       With these principles in mind, the Plaintiff's motion for summary judgment on whether it

10  has a duty to defend and indemnify the Jacksons on the John Doe 20 lawsuit will be considered.

11  **D.  DUTY TO DEFEND**

12      The Plaintiff's motion for summary judgment regarding the duty to defend (Dkt. 53)

13  should be granted.  The Plaintiff has no duty to defend the Jacksons in the John Doe 20 lawsuit.

14  Neither the primary policy nor the umbrella policy (which only provides coverage if the primary

15  policy does) could conceivably cover the allegations in the complaint.  *Xia* at 182.

16          1.  Allegations in the John Doe 20 Complaint were not for "Occurrences"

17      The primary policy provides coverage for "bodily injury" caused by an "occurrence."

18  Dkts. 39-7 at 35 and 45-4 at 21.  It defines an "occurrence" as "an accident."  Dkts. 39-7 at 46-47

19  and 45-4 at 32.

20      In considering issues of insurance coverage, Washington courts define an "accident" as

21  "an unusual, unexpected, or unforeseen happening." *Allstate Ins. Co. v. Bauer*, 977 P.2d 617,

22  620 (Wash. Ct. App. 1999).  Further, "[a]n accident is never present when a deliberate act is

23  performed unless some additional unexpected, independent and unforeseen happening occurs

24

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING THE JOHN DOE 20
LAWSUIT - 12

1    which produces or brings about the result of injury . . . . The means as well as the result must be

2    unforeseen, involuntary, unexpected and unusual." *Detweiler v. J.C. Penney Cas. Ins. Co*., 110

3    Wn.2d 99, 104 (1988).  A victim's claims against a Washington insured for "outrage . . . and

4    childhood sexual abuse do not arise from an accident, and thus do not fall within the scope of

5    coverage under homeowner's insurance policies that cover only accidental occurrences."

6    *Schorno v. State Farm Fire & Cas. Co*., 2010 WL 3119449, at *5 (W.D. Wash. Aug. 3,

7    2010)(*aff'd*, 445 Fed. Appx. 956 (9th Cir. 2011)).

8            As was found in the order granting the Plaintiff's motion for summary judgment

9    regarding the John Doe 1 and John Doe 3 lawsuits (Dkt. 46), none of the allegations in the John

10   Doe 20 complaint are for "occurrences." The complaint alleges a series of intentional acts of

11   childhood sexual abuse by Mr. Jackson. There are allegations that Mr. Jackson repeatedly

12   exposed his genitals, masturbated John Doe 20, masturbated in front of John Doe 20, sent nude

13   pictures and videos, and requested that his minor victim do the same.  John Doe 20 alleges that

14   he unwillingly complied with Mr. Jackson's requests out of fear that he would not get playing

15   time on the basketball team.  There are no conceivable allegations supporting a theory that there

16   were "accidents" or "unintentional acts."  Allegations of intentional sexual abuse are not

17   accidental; they do not constitute an "occurrence" and so there is no coverage under the policies.

18   *Schorno* at 5.  Further, as discussed below, several exclusions apply.

19           Mr. and Mrs. Jackson argue that the primary policy's "personal injury" provision covers

20   "injuries arising out of . . . false . . . imprisonment . . ." Dkt. 55.  As this Court has already held,

21   while this false imprisonment provision may apply to the incidents alleged to have occurred in

22   the Jackson's home closet, several exclusions to this coverage apply as will be discussed in the

23   next section.

24

1      2.   <u>Several Exclusions Apply</u>

2          The primary policy excludes coverage for "'bodily injury' . . . which is expected or

3   intended by an 'insured'" and for "'personal injury' which is expected or intended by or at the

4   direction of an 'insured' with the knowledge or reasonable expectation that the act would violate

5   the rights of another or would inflict 'personal injury.'" Dkts. 39-7 at 37; 45-4 at 23; and 39-7 at

6   70.  The umbrella policy also excludes "bodily injury" that is intended by the insured.  Dkt. 39-8

7   at 15.  These exclusions will be collectively referred to as "intentional acts exclusions."

8          The intentional acts exclusions exclude coverage for the Jacksons under the policies.  The

9   allegations in the John Doe 20 lawsuit are all related to Mr. Jackson's intentional sexual abuse of

10  a child.  In Washington, an intent to injure is inferred to the insured in sex abuse cases.

11  *Rodriguez v. Williams*, 107 Wn.2d 381, 387 (1986)(holding that stepfather's intent to injure

12  stepdaughter inferred as a matter of law when he committed acts of incest; accordingly, no

13  homeowners insurance coverage under exclusion for intentional acts).  Given the legal inference

14  that Mr. Jackson intended to injure John Doe 20 in his sexual abuse of John Doe 20, there is no

15  coverage for the Jacksons under the policies due to the intentional acts exclusions.

16         The Jacksons argue that false imprisonment is an intentional tort under Washington law.

17  Dkt. 55.  They contend that the primary policy's provision covering the intentional tort of false

18  imprisonment conflicts with the intentional acts exclusion.  *Id.*  The Jacksons reason that they

19  should prevail on summary judgment because this ambiguity should be construed in their favor.

20  *Id.*  The Jacksons fail to acknowledge that several other exclusions apply.

21         The primary policy excludes "'bodily injury' . . . arising out of sexual molestation" as

22  well as "bodily injury" and "personal injury" resulting from an illegal or criminal act performed

23  by an insured.  Dkts. 39-7 at 38-39; 45-4 at 24; 39-7 at 71.  The umbrella policy also excludes

24

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING THE JOHN DOE 20
LAWSUIT - 14

1    "bodily injury" and "personal injury" "arising out of sexual molestation" or "illegal or criminal"

2    acts or omissions.  Dkt. 39-8 at 8 and 16.

3         The allegations in the John Doe 20 complaint arise from the sexual molestation of John

4    Doe 20 by Mr. Jackson.  John Doe 20 contends that his injuries are a result of Mr. Jackson's

5    illegal or criminal acts of sexual exploitation.  Both the primary and umbrella policies exclude

6    coverage for these acts.  John Doe 20's claims against Mr. Jackson are not conceivably covered.

7         Further, the parents of John Doe 20 make claims for loss of the parent/child relationship.

8    Dkt. 54-3.  Their alleged loss, to the extent it is a covered loss, directly resulted from Mr.

9    Jackson's sexual molestation of their child; "it necessarily arises out of that conduct."  *Safeco*

10   *Ins. Co. of Am. v. Wolk*, 342 F. Supp. 3d 1104, 1111 (W.D. Wash. 2018).  The policies do not

11   conceivably cover the parents' claims, either.

12        The Jacksons did not meaningfully address the motion for summary judgment on the

13   negligence and loss of the parent/child relationship claims asserted against Mrs. Jackson.  The

14   motion for summary judgment as it relates to the claims asserted against Mrs. Jackson in the

15   John Doe 20 lawsuit (Dkt. 53) should be granted.  John Doe 20's and his parents' claims against

16   Mrs. Jackson for negligently failing to report the child abuse and loss of the parent/child

17   relationship also arise out of Mr. Jackson's sexual molestation of John Doe 20.  The policies do

18   not conceivably cover these claims against Mrs. Jackson.

19        Mr. and Mrs. Jackson do not contest the Plaintiff's motion for summary judgment on the

20   WLAD claims, to the extent a WLAD claim is made against either Mr. or Mrs. Jackson.  In any

21   event, there is no showing that the policies conceivably cover John Doe 20's WLAD claim

22   asserted against Mr. and Mrs. Jackson, if any.

23

24

The Plaintiff has no duty to defend Mr. and Mrs. Jackson in the John Doe 20 lawsuit because the claims asserted in that lawsuit are not conceivably covered by the policies.

**E.  DUTY TO INDEMNIFY**

If there is no duty to defend, then there is no duty to indemnify.  *Liberty Mut. Ins. Co. v. Lange*, 2023 WL 4704712, at *6 (W.D. Wash. July 24, 2023)(*citing Woo v. Fireman's Fund Ins. Co.,* 161 Wash.2d 43, 53 (2007)).  There is no duty to defend here, so there is no duty to indemnify.

**F.  CONCLUSION**

The Plaintiff's partial motion for summary judgment should be granted.  There are no material issues of fact, and the Plaintiff is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  Mr. Jackson's claim of possible impingement of his Fifth Amendment rights do not raise a material issue.  His arguments are speculative, and he does not show that a delay or stay of this motion is required.  Given the allegations in the John Doe 20 complaint, there is no conceivable coverage under the policies, much less actual coverage.  The Plaintiff has no duty to defend or indemnify Mr. or Mrs. Jackson for the claims asserted against them in the John Doe 20 lawsuit.  This order only addresses the Plaintiff's duties to Mr. and Mrs. Jackson in the John Doe 20 lawsuit.

It is unclear what remains in this case.  None of the remaining Defendants (Sterling, John Doe 1, John Doe 2, Jane Doe 1, John Doe 3, John Doe 4, Jane Doe 2, Jane Doe 20, for herself and as guardian ad litem for John Doe 20, and John Doe 21) responded to the motions for summary judgment.  The relief Plaintiff seeks against them, if any, is cloudy.  The parties should be ordered, on or before August 5, 2024, to file a status report to update the Court on what

remains to be done in the case, if anything.  The parties are reminded that this case is scheduled to begin trial on September 16, 2024.

### III.    ORDER

It is **ORDERED** that:

- Plaintiff American Strategic Insurance Corp's Motion for Summary Judgment (Dkt. 53) **IS GRANTED:**

    o There is no defense or indemnity coverage available to Jacob Jackson and/or Stacy Jackson under the primary or umbrella policies issued by American Strategic Insurance Corp for the claims asserted against Jacob Jackson and/or Stacy Jackson in *Jane Doe 20, as Guardian ad Litem for John Doe 20, et. al. v. Inspirit Athletics, Inc. et. al,* Pierce County, Washington Superior Court case number 23-2-08692-4.

- By **August 5, 2024**, the parties **SHALL** file a status report to update the Court on what remains to be done in this case.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 24th day of July, 2024.

ROBERT J. BRYAN
United States District Judge